UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

MITCHELL DICKENS and
KAITLYN DICKENS,

        Plaintiffs,

v.                                    Civil Action No. 5:24-cv-00543

DONNA ELLISON,
an underinsured motorist, and
ERIE INSURANCE COMPANY,

        Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pending are (1) Defendant Erie Insurance Company's ("Erie") Motion for Summary Judgment [ECF 36] and (2) Plaintiffs Kaitlyn and Mitchell Dickens' Partial Motion for Summary Judgment [ECF 38], both filed August 25, 2025. The parties filed their respective responses on September 8, 2025. [ECF 40, 41]. Erie replied on September 15, 2025. [ECF 42]. The matter is ready for adjudication.

**I.**

This case arises from an automobile accident that occurred on May 18, 2023. [ECF 1–1 ¶¶ 6–7]. Plaintiff Mitchell Dickens was operating a Harley Davidson motorcycle when Defendant Donna Ellison, while making a left turn on Grandview Road in Shady Spring, collided with Mr. Dickens. [*Id.*]. Mr. Dickens sustained various injuries and was transferred to and treated at Raleigh General Hospital. [*Id.* ¶¶ 8–9]. Mr. Dickens' hospital bills totaled $138,988.89. [*Id.* ¶ 12]. Mr. Dickens' Harley Davidson was insured under a policy with Erie (the "Erie Policy"). [*Id.*

¶ 14]. The Erie Policy was in Kaitlyn Dickens' name, and Mr. Dickens was later added as a named insured. [ECF 36 Exs. 6, 9–15]. Later still, but prior to the accident, the Harley Davidson was added as a second vehicle under the Erie Policy. [*Id.*]. Mr. Dickens' damages exceeded Ms. Ellison's coverage limits. [ECF 1–1 ¶¶ 15, 24].

The Dickens instituted this action against Ms. Ellison and Erie. They plead a negligence claim ("Count I") against the former and the following against the latter: (1) Unfair Claims Settlement in Violation of *West Virginia Code* section 33–11–4(9) [which statutory provision is a part of the West Virginia Unfair Trade Practices Act ("UTPA"), *West Virginia Code* sections 33–11–1 to –10] ("Count II"), (2) a declaratory judgment "establishing that there was no commercially reasonable offer of underinsured motorist coverage for the motorcycle at the $100,000/$300,000 limit as required by West Virginia law" ("Count III") [*Id.* ¶ 45], (3) Common Law Bad Faith ("Count IV"), and (4) Violation of the UTPA ("Count V").

The central issue is whether West Virginia law required Erie to offer an underinsured motorist policy to the Dickens matching the limits of their liability policy when they added the Harley Davidson.

## II.

### A.    *Governing Law*

*Federal Rule of Civil Procedure* 56 provides that summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986). "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the allegations of her pleadings."

*Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)). The Court must "view the evidence in the light most favorable to the [nonmoving] party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal quotation marks and citation omitted); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

When faced with cross-motions for summary judgment, the Court applies the above standard and must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). "The court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *see Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment.

## B.    *Erie's Motion for Summary Judgment*

### 1. Offer of Uninsured Motorist Coverage (Count III)

*West Virginia Code* section 33–6–31(b) requires insurers to make an offer of underinsured motorist coverage to the insured. "Where an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that any rejection of said offer by the insured was knowing and informed." *Thomas v. McDermitt*, 232 W. Va. 159, 163–64, 751 S.E.2d 264, 268–69 (2013) (quoting *Bias v. Nationwide Mut. Ins. Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987)). The insurer may discharge this burden by adhering to the prescribed form discussed in *West Virginia Code* section 33–6–31d. *Burrows v. Nationwide Mut.*

*Ins. Co.*, 215 W. Va. 668, 673, 600 S.E.2d 565, 570 (2004). By providing the statutory-compliant form to the insured, the insurer presumptively satisfies *West Virginia Code* section 33–6–31(b). *Id*.

The Supreme Court of Appeals of West Virginia has established that "the completion and transmittal of th[e] form by an individual insured is treated, by legislative design, as 'binding on all persons insured under the policy.'" *Id*. (quoting *West Virginia Code* section 33–6–31d(b)). The Supreme Court of Appeals has explicitly observed (decades ago) there are only three (3) instances where the statutory offer is required. The High Court's observations are worth quoting at length:

> Presented in another fashion, this Court is being asked to identify the events which statutorily impose upon an insurer the duty to make an offer of optional insurance coverage to its insureds. To begin our analysis of this issue, we look to the statutory language of West Virginia Code § 33–6–31d to identify *three events*, the separate occurrence of which requires an insurer to make an offer of optional underinsured motorist coverage.

> Under the terms of West Virginia Code § 33–6–31d, the insurer must make an offer of optional underinsurance coverage *[1] concurrent with the initial purchase of liability coverage* ["initial purchase event"]. In mandatory terms, the statute provides that "[o]ptional limits of ... underinsured motor vehicle coverage required by section 31 [§ 33–6–31] of this article shall be made available to the named insured at the time of initial application for liability coverage." W.Va. Code § 33–6–31d(a). The manner in which the form offering the underinsurance coverage is required to be transmitted to the insurance applicant is further set forth by statute. The insurer has the option of either "delivering the form to the applicant" or "mailing the form to the applicant together with the applicant's initial premium notice." W. Va. Code § 33–6–31d(b).

> In addition to the initial application for liability insurance, the statute provides *two other triggers* for offering underinsurance to an insured. The statute is clear that *[2]* "upon any request of the named insured ["request by named insured event"]," underinsurance has to be made available. W.Va. Code § 33–6–31d(a). Finally, the statute provides *[3]* that the forms offering the optional underinsured motorist coverage are to be made available "to any named insured who requests different coverage limits ["request for different limits event"]." W. Va. Code § 33–6–31d(e). As to whether the statute imposes a duty to offer underinsurance upon insurers other than as expressly delineated, *the Legislature clearly anticipated this*

4

> *issue and responded statutorily by providing: "No insurer is required to make such form available or notify any person of the availability of such optional coverages authorized by this section except as required by this section." Id.*

*Burrows*, 215 W. Va. at 673–74, 600 S.E.2d at 570–71 (emphasis added) (footnote omitted).

The first qualifying event above, namely, the initial purchase event, refers to the point at which the policy is first offered to the insured, in other words, at the main policy's purchase and inception. It is undisputed that Erie met its obligations at that time. Erie highlights Ms. Dickens' initial policy forms including the signed section 33–6–31d offer. [ECF 37 at 3].

The second qualifying event above, namely, the request by named insured event, also never occurred. Simply put, the Dickens never requested from Erie underinsured motorist coverage in anything more than the minimum statutory amount.

The third qualifying event above, namely, the request for different limits event, is cabined strictly to a request for different *liability* coverage limits. *Burrows*, 215 W. Va. at 668, 679, 600 S.E.2d at 576 ("Consequently, only changes that are requested by insureds to alter their actual liability coverage will invoke the statutory duty imposed on insurers to make underinsured motorist coverage available within the meaning of West Virginia Code § 33–6–31d(e)."). That type of request is not here involved. Erie provides copies of every policy change made by the Dickens following policy inception. [ECF 36 Exs. 9–15]. Despite changes to the covered individuals and automobiles, the liability limit remained the same. [*See id.*].

The Dickens do not contend otherwise. They instead hinge their entire case on a very slender reed: that, regardless of the *Burrows* standard, Erie was obliged to make a new offer of underinsured coverage when the Dickens added the Harley Davidson to the Erie policy inasmuch as it is Erie's standard practice to do so under the circumstances. [ECF 41 at 3]. They rely heavily on the deposition testimony of Erie's corporate representative. [*See id.*]. The Erie

5

representative agreed at her deposition that "adding a vehicle, adjusting the policy limits, that is a change to the policy." [*Id*. at 2].

A corporate representative's position on state law -- assuming this representative went so far -- is of no concern. The decision and command in *Burrows* -- faithful as it is to the governing statutory language -- settles the matter conclusively. Any contrary statement by a corporate representative is, at best, an unenforceable, gratuitous promise. Also, there are myriad changes an insured might make or request outside of a change in liability limits; those changes simply do not trigger the underinsured offer requirement. *Burrows*, 215 W. Va. at 679, 600 S.E.2d at 576 ("[T]he language contained in West Virginia Code § 33–6–31d(e) . . . does not refer to a request for changes in other types of coverage such as collision, comprehension, loss of use, or towing."). Accordingly, Erie fully satisfied its obligations under *West Virginia Code* sections 33–6–1(b) and 33–6–31d.

Erie is thus entitled to judgment as a matter of law on Count III, along with any embedded claim for breach of the insurance policy contract. The Dickens' Partial Motion for Summary Judgment [ECF 39], limited in scope to Count III, is consequently **DENIED**.

### 2. Breach of Good Faith and Fair Dealing (Count IV)

Under West Virginia Law, "an alleged breach of the covenant of good faith and fair dealing is not a separate cause of action from a breach of contract claim." *State ex rel. Nationwide Mut. Ins. Co. v. Wilson*, 236 W. Va. 228, 778 S.E.2d 677, n.1 (2015) (citing *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP,* 231 W.Va. 577, 587, 746 S.E.2d 568, 578 (2013)); *Highmark W. Virginia, Inc. v. Jamie*, 221 W. Va. 487, 492, 655 S.E.2d 509, 514 (2007). Accordingly, if there is no breach of contract, there can be no breach of the implied covenant of

good faith and fair dealing. *Gaddy Eng'g Co.*, 231 W. Va. at 587, 746 S.E.2d at 578 (citing

*Highmark W. Virginia, Inc.*, 221 W. Va. at 492, 655 S.E.2d at 514).

As noted, there is no breach of contract. And the common law claim for breach of

the duty of good faith and fair dealing likewise falls asunder. Erie is thus entitled to judgment as a

matter of law on Count IV.

### 3. The Extracontractual UTPA Claims (Count II and Count V)

The Dickens' remaining claims against Erie, namely, Count II and Count V, arise

under the UTPA. [ECF 1–1 ¶¶ 21–36, 52–58]. Count II alleges as follows:

> 33. From January 3, 2024, to the present, the Defendant Erie has refused in bad faith to effectuate a prompt, fair, and equitable settlement on Plaintiff's claims under the its [sic] policy.

> 34. Defendant Erie has failed to promptly, fairly, and reasonably investigate Plaintiffs['] claims under the Erie Policy.

> 35. Erie's denials were done with such frequency as to indicate a general business practice.

[*Id.* at 5]. Count V alleges Erie engaged in additional UTPA violations as follows:

> • Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

> • Failing to acknowledge and act reasonable [sic] prudently [sic] upon communications with respect to claims arising under insurance policies;

> • Failing to implement reasonable standards for the prompt investigation of claims arising under insurance policies;

> • Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonable [sic] clear;

> • Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by insureds, when the insureds have made claims for amounts reasonable [sic] similar to the amounts ultimately recovered;

• Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

[*Id.* ¶ 56]. Upon review, it appears the Dickens are claiming Erie violated *West Virginia Code* sections 33–11–4(9)(a), (b), (c), (d), (f), (g), and (n).

The Dickens lack standing to allege claims under *West Virginia Code* sections 33–11–4(9)(b), (c), (d), or (f). *See, e.g.*, *State ex rel. W. Virginia Mut. Ins. Co. v. Salango*, 246 W. Va. 9, 17, 866 S.E.2d 74, 82 (2021) ("The common thread through sections (b), (c), (d), and (f) is that they do not create [first party] duties for liability insurers toward their insureds."); *State ex rel. State Auto Prop. Ins. Companies v. Stucky,* 239 W. Va. 729, 735, 806 S.E.2d 160, 166 (2017) ("With regard to a liability insurance policy, the term 'claim' is used 'in its common (and common sense) usage: an effort by a third party to recover money from the insured.'").

Respecting the remaining claims, alleged under *West Virginia Code* sections 33–11–4(9)(a), (g), and (n), the only alleged wrongdoing by Erie is confined to the putative failure to make an effective offer of underinsured motorist coverage. Inasmuch as the above discussion forecloses any contractual claim relating to the provision of underinsured coverage, there is no basis to find Erie contravened *West Virginia Code* sections 33–11–4(9)(a), (g), and (n).[1]

## C.    *Negligence Claim (Count I)*

The remaining negligence claim against Ms. Ellison is, according to the Dickens, one made "in name only." [ECF 1–1 at 3]. *See Tilley v. Allstate Ins. Co.*, 40 F. Supp. 2d 809, 812

---

[1] The Dickens make passing mention of Erie's failure to provide a multivehicle discount. [ECF 1–1 ¶¶ 26–27]. They allege no additional facts tying this alleged failure to their other claims. Additionally, to the extent -- if any -- the Dickens might have attempted to allege third-party claims against Erie by virtue of its role as the insurer of Ms. Ellison, they have failed to do so. Accordingly, the Court addresses the Dickens' claims against Erie solely as first-party claims.

(S.D. W. Va. 1999). Inasmuch as the Dickens profess no intention to further pursue Count I, it is **DISMISSED**.

### III.

For the foregoing reasons, Erie's Motion for Summary Judgment [**ECF 36**] is **GRANTED** and all claims against Erie are **DISMISSED**. The Dickens' Partial Motion for Summary Judgment [**ECF 38**] is **DENIED**. Count I is likewise **DISMISSED**.

The Court **DIRECTS** the Clerk to transmit a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER:        December 10, 2025

Frank W. Volk
Chief United States District Judge

9